No. 20-20084

IN THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

JACOB GORSKY AND OLESYA GORSKY,
Plaintiffs – Appellees,

v.

DEPUTY GUAJARDO, DEPUTY SMALL, DEPUTY BERRY AND
CORPORAL RIVAUX,
Defendants – Appellants.

Appeal from the United States District Court for the Southern District of Texas
In Case No. 4:16-CV-02877, the Honorable Lee Rosenthal presiding.

**APPELLANTS' PETITION FOR REHEARING *EN BANC***

SUBMITTED BY:

**OF COUNSEL:**

CHRISTIAN D. MENEFEE
State Bar No. 24088049
County Attorney of
Harris County, Texas
JONATHAN FOMBONNE
State Bar No. 24102702
First Assistant County Attorney
SETH HOPKINS
Special Assistant County Attorney
State Bar No. 24032435
1019 Congress
Houston, Texas 77002

**ATTORNEY-IN-CHARGE:**

*/s/ Suzanne Rene' Bradley*
SUZANNE RENE' BRADLEY
Senior Assistant County Attorney
State Bar No. 00793375
1019 Congress
Houston, Texas 77002
Telephone: (713) 274-5330
Facsimile:  (713) 755-8924
Suzanne.Bradley@harriscountytx.gov
**Attorneys For Defendants-Appellants
Deputy Guajardo, Deputy Small,
Deputy Berry, and Corporal Rivaux**

June 9, 2023.

Appellants intend for this Petition also to be treated as a Petition for Rehearing by the Panel, pursuant to the comments accompanying this Court's IOP 35.

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Plaintiff-Appellees | Counsel |
|---|---|
| Jacob Gorsky<br>Oleysa Gorsky | Randall Kallinen<br>511 Broadway Street<br>Houston, Texas 77012<br>Telephone: (713) 320-3785<br>attorneykallinen@aol.com |
| **Defendant-Appellants** | **Counsel** |
| Deputy J. Guajardo<br>Deputy P. Small<br>Deputy G. Berry | Appellate Counsel:<br>Suzanne Rene' Bradley<br>Suzanne.Bradley@harriscountytx.gov<br>Seth Hopkins<br>Seth.Hopkins@harriscountytx.gov<br>Harris County Attorney's Office<br>1019 Congress<br>Houston, TX 77002<br>Telephone: (713) 274-5330<br><br>Former trial counsel:<br>Celena Vinson<br>Thompson Horton LLP<br>3200 Southwest Freeway, Suite 2000<br>Houston, Texas 77027<br>Telephone: (713) 554-6742 |

| Corporal B. Rivaux | Appellate Counsel:<br>Suzanne Rene' Bradley<br>Suzanne.Bradley@harriscountytx.gov<br>Seth Hopkins<br>Seth.Hopkins@harriscountytx.gov<br>Harris County Attorney's Office<br>1019 Congress<br>Houston, TX 77002<br>Telephone: (713) 274-5330 |
| **Former Defendant**<br>**(Dismissed with no appeal)** | **Trial Counsel** |
| Harris County, Texas | Stanley Clark<br>Harris County Attorney's Office<br>1019 Congress<br>Houston, TX 77002<br>Telephone: (713) 755-5101 |

*/s/ Suzanne Rene' Bradley*
SUZANNE RENE' BRADLEY
Senior Assistant County Attorney

## BASIS FOR REVIEW

*En banc* review is merited because the majority panel's opinion conflicts with the following reported decisions and others:

*Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir. 2017).

*Bodzin v. City of Dallas*, 768 F. 2d 722 (5th Cir 1985).

*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010).

*Childers v. Iglesias*, 848 F. 3d 412 (5th Cir. 2017).

*Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007).

*Graham v. Connor,* 490 U.S. 396 (1989).

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018)(per curiam).

*Kokesh v. Curlee*, 14 F.4th 382 (5th Cir. 2021).

*Lansdell v. Miller* , 817 F. App'x 27, 27 (5th Cir. 2020)(per curiam).

*Morgan v. Swanson,* 659 F.3d 359 (5th Cir. 2011).

*Mullenix v. Luna*, 577 U.S. 7 (2015).

*Taylor v. Riojas*, 141 S. Ct. 52 (2020).

*Templeton v. Jarmillo*, 28 F.4th 618 (5th Cir. 2022)

*Voss v. Goode*, 954 F.3d 234 (5th Cir. 2020).

The proceeding also involves one or more questions of exceptional importance, including (1) the correct analysis of precedent and the clearly established law prong of qualified immunity; (2) an impermissible shifting of a plaintiffs' burden of proof to defendants in qualified immunity analysis; (3) even accepting as true the plaintiffs' facts, they failed to show excessive force and false arrest and (4) failure to heed Supreme Court qualified immunity precedent, including

but not limited to, *Mullenix v. Luna*, 577 U.S. 7, 18-19 (2015), which admonishes courts that clearly established rights not be defined at a high level of generality.

*Mullenix* is an excessive force case where the Supreme Court stated that clearly established rights should not be defined at a "high level of generality." 577 U.S. at 16. The high court has insisted that clearly established rights be defined at a particularized level in order to ensure that "[t]he contours of the right" are "sufficiently clear [such]that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, defining the clearly established right at issue at a granular level makes sure that an officer has "fair warning" that her actions are unconstitutional before she may be held individually liable for damages. Fair warning is the touchstone of qualified immunity. *Shumpert v. City of Tupelo*, 905 F.3d 310, 321 (5th Cir. 2018). See also, *Cope v. Cogdill*, 3 F.4th 198, 218 (5th Cir. 2021), *cert. denied,* 213 L. Ed. 2d 1123, 142 S. Ct. 2573 (2022); *City of Tahlequah, Oklahoma v. Bond*, 211 L. Ed. 2d 170, 142 S. Ct. 9, 11–12 (2021)("We have repeatedly told courts not to define clearly established law at too high a level of generality").

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

BASIS FOR REVIEW ....................................................................................... iv

TABLE OF CONTENTS .................................................................................... vi

TABLE OF AUTHORITIES ............................................................................... vii

ISSUES PRESENTED ....................................................................................... 1

COURSE OF PROCEEDINGS ............................................................................ 1

FACTS ............................................................................................................ 2

ARGUMENT ................................................................................................... 3

    A.    Mr. Gorsky was not subjected to excessive force. ......................................... 4

    B.    Majority improperly reversed Plaintiff's burden of overcoming qualified immunity. .................................................................................................. 6

    C.    Mrs. Gorsky was not subjected to excessive force. ...................................... 7

    D.    Mr. Gorsky was not falsely arrested.......................................................... 10

CONCLUSION ................................................................................................ 14

CERTIFICATE OF COMPLIANCE .................................................................... 15

CERTIFICATE OF SERVICE ........................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alexander v. City of Round Rock*,
   854 F.3d 298 (5th Cir. 2017) .................................................................5, 9

*Bell v. City of Southfield*,
   37 F.4th 362 ...........................................................................................4

*Bodzin v. City of Dallas*,
   768 F.2d 722 (5th Cir. 1985) .................................................................10

*Brown v. Callahan*,
   623 F.3d 249 (5th Cir. 2010) ...................................................................6

*Brown v. Lynch*,
   524 F. App'x 69 (5th Cir. 2013)...............................................................3

*Childers v. Iglesias*,
   848 F.3d 412 (5th Cir. 2017) .................................................................11

*District of Columbia v. Wesby*,
   138 S. Ct. 577 (2018)..................................................................... 11, 14

*Freeman v. Gore*,
   483 F.3d 404 (5th Cir. 2007) ................................................. 5, 6, 8, 12

*Glenn v. City of Tyler*,
   242 F.3d 307 (5th Cir. 2001) ...............................................................5, 6

*Graham v. Connor*,
   490 U.S. 386 (1989)...................................................................... 4, 5, 8

*Gorsky v. Guajardo*,
   No. 20-20084, 2023 WL 3690429 (5th Cir. May 26, 2023) ....................... passim

*Henderson v. Harris Cnty., Texas,*
   51 F.4th 125 (5th Cir. 2022) ...................................................................4

*Illinois v. Gates,*
    462 U.S. 213 (1983)............................................................................11

*Kaley v. United States,*
    134 S. Ct. 1090 (2014).......................................................................11

*Kisela v. Hughes,*
    138 S. Ct. 1148 (2018) (per curiam .................................................7, 9

*Kokesh v. Curlee,*
    14 F.4th 382 (5th Cir. 2021) .............................................................3, 8

*Marks v. Hudson,*
    933 F.3d 481 (5th Cir. 2019) .............................................................3, 4

*Morgan v. Swanson,*
    659 F.3d 359 (5th Cir. 2011) ...........................................................4, 12

*Mullenix v. Luna,*
    577 U.S. 7 (2015)......................................................................... 3, 4, 10

*Salazar v Molina,*
    37 F.4th 278 (5th Cir. 2022) ..................................................................4

*Tarver v. City of Edna,*
    410 F.3d 745 (5th Cir. 2005) .................................................................4

*Taylor v. Riojas,*
    141 S. Ct. 52 (2020)..............................................................................10

*Templeton v. Jarmillo,*
    28 F.4th 618 (5th Cir. 2022) .................................................................5

*Voss v. Goode,*
    954 F.3d 234 (5th Cir. 2020) ...............................................................13

## ISSUES PRESENTED

1. Did the majority create a conflict of exceptional importance by failing to analyze the "clearly established law" prong of qualified immunity and shifting the burden to defendants in an excessive force claim against the officers?

2. Did the majority create a conflict of exceptional importance by failing to follow precedent establishing that the use of handcuffs under circumstances such as these did not violate clearly established law?

3. Did the majority create a conflict of exceptional importance by failing to analyze the "clearly established law" prong of qualified immunity and shifting the burden to defendants in a false arrest claim against the officers?

## COURSE OF PROCEEDINGS

The district court denied summary judgment and qualified immunity to the four defendant-deputies, finding that fact issues remained on several civil rights causes of action. The deputies timely appealed.

In a 2-1 opinion, the panel affirmed the district court. *JACOB GORSKY; OLESYA GORSKY, Plaintiffs-Appellees, v. DEPUTY GUAJARDO; DEPUTY SMALL; DEPUTY BERRY; DEPUTY RIVAUX, Defendants-Appellants.,* No. 20-20084, 2023 WL 3690429 (5th Cir. May 26, 2023).

The dissent by Justice Jerry E. Smith found the majority incorrectly affirmed two claims against the deputies on illegal search and unlawful entry, but argued that the excessive force claims by Mr. and Mrs. Gorsky, as well as the false arrest claim by Mr. Gorsky, and ignored the clearly established prong of qualified immunity analysis, and was in contradiction to Fifth Circuit and Supreme Court precedent.

It is upon the basis of the dissent and the dissenting judge's analysis of qualified immunity that defendant-appellants seek *en banc* review and rehearing.

## FACTS

The facts and record are fully set out in the Deputies' underlying appellate brief.  This a brief summary of those facts.

Ten years ago, Appellees Jacob and Olesya Gorsky began a long and petty battle with their neighbors, the Koczmans. The police were frequently called out to mediate. Mrs. Gorsky falsely accused Mr. Koczman of having guns to scare her. ROA.353. Mrs. Koczman threw dog poop into the Gorskys' pool and was charged with felony mischief. ROA.336, 359-365. The Gorskys called police saying the Koczmans had loud machinery and a noisy leaf blower. ROA.379, 537. The Koczmans accused the Gorskys of having a noisy pool filter. ROA.368. The Koczmans complained that Mr. Gorsky swam naked in his pool. ROA.427. The Koczmans accused the Gorskys of somehow directing rain into his yard. ROA.468-470. Both families posted religious symbols, sayings and bright lights to annoy one another. ROA.375, 384, 386-393, 405-408, 537. Finally, Mrs. Gorsky was accused of egging the Koczmans' car, leading to this lawsuit.

The Koczmans predicted it would all end badly.

It did -- for the four deputies who went out to the Gorskys to investigate the egging. They were sued by the Gorskys for violating their civil rights.

# ARGUMENT

As Judge Jerry E. Smith's dissent correctly points out:

> The officers have qualified immunity ("QI")—even construing the facts in favor of the Gorskys, we can dispense with the meritless § 1983 claims because the officers did not violate clearly established law. Yet the majority gives clearly established law little more than lip service. <u>When it finally grapples with clearly established law on the false-arrest claim, it renders our jurisprudence unrecognizable. This is just one more example of the majority's willingness to skirt the strictures of QI.</u>

*Gorsky,* 2023 WL 3690429 at *10 (emphasis added).

As the dissent correctly noted, even assuming the facts in the light most favorable to the Gorskys, the Court must analyze *de novo* whether the deputies violated a constitutional right and whether they acted reasonably in light of clearly established law. *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021). "Instead, the majority sketches a few fact disputes, throws up its hands, and ignores the second half of the analysis. That is not our law." *Gorsky,* 2023 WL 3690429, at *11.

Then dissent notes that the majority relies on *Brown v. Lynch*, 524 F. App'x 69 (5th Cir. 2013), for a generic proposition, but the facts of that unpublished case do not help the majority. In *Brown,* at 81, the court found excessive force where police punched a nonthreatening arrestee eight times in the body and face with closed fists. These are not the facts in this case, and this in direct contradiction to *Mullenix.*

In addition, unpublished opinions "do not establish any binding law for the circuit," so "they cannot be the source of clearly established law for the qualified

immunity analysis." *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019) (quotation omitted); *see also Salazar*, 37 F.4th at 286 (same); *Bell v. City of Southfield*, 37 F.4th 362, 367–68 (Thapar, J.) ("[A] plaintiff cannot point to unpublished decisions to ... [demonstrate] a right has been clearly established."); see also, *Henderson v. Harris Cnty., Texas,* 51 F.4th 125, 133 (5th Cir. 2022),

Then, the dissent notes the majority cites *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005), leaving out that it involved an officer who slammed a police car door on an arrestee's head and foot. *Gorsky,* 2023 WL 3690429, at *11. Again, different facts and contrary to the admonition to not define qualified immunity too generally when denying qualified immunity. *Mullenix*, 577 U.S. 16-19.

## A.    Mr. Gorsky was not subjected to excessive force.

It is Mr. Gorsky's burden to defeat qualified immunity. He must show that (1) that his rights were violated and (2) that "the law so clearly and unambiguously prohibited" the defendant's conduct that every reasonable official would have known his actions were illegal. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). Mr. Gorsky has proven neither, the dissent noted. *Gorsky,* at *11.

To violate the Fourth Amendment, police must inflict injury with objectively unreasonable force. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). Reasonableness is assessed by considering, among other things, (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety

4

of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, at 96. *De minimis* injuries are not objectively unreasonable, although whether the police are justified in causing minor injuries depends on the facts. *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017).

The majority states he suffered unreasonable harm because he was in "a lot of pain" when he was handcuffed, and did not pose a threat to officers or resist arrest. *Supra* III.B.3. However, the majority discusses no caselaw. "The 'a lot of pain' test appears nowhere in our jurisprudence." *Gorsky,* 2023 WL 3690429, at *11.

The dissent correctly points to settled precedent that makes "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest" are *de minimis* and therefore "do not give rise to a constitutional claim for excessive force." *Gorsky* at *13, citing to *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (Dennis, J.). In *Freeman*, the plaintiff alleged that the police twisted her arms, "jerked her all over the carport," and applied handcuffs so tightly that it bruised her wrists and arms. *Freeman*, at 416–17. In *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001), the plaintiff alleged that handcuffs were applied too tightly and caused one of her wrists to swell. And in *Templeton v. Jarmillo*, 28 F.4th 618, 623 (5th Cir. 2022), the plaintiff alleged that a tight handcuffing caused pain in his shoulder. In each of those cases, this Court held that the use of force incident to

5

handcuffing was constitutional, so the officers were entitled to qualified immunity.

The majority is criticized for ignoring *Freeman*'s core holding, as well as other hand cuffing precedent, and instead finds that even insignificant injuries can be unlawful if they result from excessive force. *Gorsky,* 2023 WL 3690429, at *12.

The problem is Mr. Gorsky's injuries were not the result of excessive force, as precedent clearly shows. Much like in *Glenn*, at most, he alleges that, while being handcuffed, police pushed him around and twisted his arm, and he screamed. The dissent notes that for the first time on appeal, Mr. Gorsky alleges he was bruised, but that appears nowhere in the record. The majority rightly declines to credit that accusation. "Even if he was bruised, this case would be like *Freeman." Gorsky,* 2023 WL 3690429, at *12. Those are the minor injuries associated with handcuffing that this Court's precedent have found are not excessive. As the dissent correctly points out, "[t]he majority gives no reason to treat this case differently."

## B.   Majority improperly reversed Plaintiff's burden of overcoming qualified immunity.

The dissent points out that it is not the deputies' burden to prove their conduct was unreasonable. The burden belongs to the Gorskys. *Gorsky,* 2023 WL 3690429, at *11, citing to *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Mr. Gorsky failed to do so, and "it's not even close." *Gorsky,* 2023 WL 3690429, at *12.

The majority never discusses the clearly established prong. The dissent correctly calls this "a grave deficiency: because even if the use of force in

handcuffing Mr. Gorsky was objectively unreasonable, he had to prove that it was so clearly excessive under our law that any reasonable officer would have been on notice." *Gorsky,* at *12, citing to *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). The dissent writes that the appropriate degree of force in this particular situation was not clearly established by any precedent. Thus, the majority incorrectly found the handcuffing based on "a lot of pain" was a constitutional violation, and never analyzed whether it was clearly established as such.  Precedent shows it was not established, and in fact was the opposite.

With excessive force, police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue. *Kisela*, 138 S. Ct. at 1153 (internal citations and quotation marks omitted). As the dissent noted, both in 2016 and now, there was no controlling precedent putting every reasonable officer on notice that it is unconstitutional for a suspect to experience incidental pain while being handcuffed. "That should have ended the qualified immunity analysis on Mr. Gorsky's excessive-force claim" and the deputies should have been granted summary judgment. *Gorsky,* 2023 WL 3690429, at *12-13.

## C.   Mrs. Gorsky was not subjected to excessive force.

The majority makes the same mistake with Mrs. Gorsky, who also did not meet the prongs of qualified immunity.  She contends that Cpl. Rivaux used excessive force by grabbing her shoulders, turning her around while handcuffing

her, and then pushing her down into a chair while handcuffing her. She alleges that afterward, she developed bruises on her legs and wrists. The district court identified several factual disputes over the nature and degree of Cpl. Rivaux's use of force. The majority insists that those disputes rob the court of jurisdiction over the appeal. In other words, it shrugs and says: "Our hands are tied." *Gorsky,* at *13.

But their hands are not tied.

"We can still assume the facts in Mrs. Gorsky's favor and determine whether those injuries resulted from excessive force." *Gorsky*, at *13, citing to *Kokesh*, 14 F.4th at 391–92. Like with Mr. Gorsky, the violation must contradict clearly established law. "The majority does neither." *Gorsky,* 2023 WL 3690429, at *13.

The dissent correctly analyzes clearly established law. Bruising from handcuffing may be a *de minimis* injury. *Freeman*, 483 F.3d at 417. But as the dissent notes, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Gorsky,* 2023 WL 3690429, at *13, citing to *Graham*, 490 U.S. at 396 (cleaned up).

The dissent correctly points to the fraught history police had with these neighbors. "It should also not escape consideration that the police had a long history with the Gorkys and may have feared escalation." *Gorsky,* 2023 WL 3690429, at *13. Under *Graham*, "it was still her burden to show that Rivaux arrested her with excessive force. It is far from certain that she has carried that burden, even if she is

right on the facts." *Gorsky,* at *13.

Then the dissent does the analysis on clearly established law, and correctly finds there is "no debate, however, that the officer's conduct did not violate clearly established law." *Gorsky,* at *13. Mrs. Gorsky did not point to a single case holding that pushing an arrestee into a chair—or something even remotely comparable—was excessive force. She has not met her burden.

Nor does the majority supply one for her. The dissent writes that a survey of Court precedent shows the weakness of its position. "For example, we have held that police used excessive force on nonthreatening arrestees when they pulled a plaintiff from her car and threw her against the car, forced a plaintiff's jaw into a window and broke teeth, or "mashed" a plaintiff's face into the concrete. But none of Mrs. Gorsky's allegations comes close to that kind of objective unreasonableness." *Gorsky,* at *13, citing to *Alexander v. City of Roundrock*, 854 F.3d 298, 309 (5th Cir. 2017) ("the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances").

Importantly, without unambiguous precedent, it cannot be clearly established that pushing an arrestee into a chair with enough force to cause bruising is objectively unreasonable force. *Gorsky,* 2023 WL 3690429, at *14, citing to *Kisela*, 138 S. Ct. at 1152–53. "Nor is this one of the rare cases where, in the absence of a

governing precedent, the illegality would be *so* obvious that any thinking officer would be on notice that his actions were unconstitutional." *Gorsky,* 2023 WL 3690429, at *13, citing to *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020).

Thus, even assuming Mrs. Gorsky's facts, she had not met her burden. She has not demonstrated that Rivaux violated clearly established law. At best, she may have shown that Rivaux's actions were disputably illegal, but <u>only by applying general</u> Fourth Amendment rules to a new situation. "How many times must the Supreme Court admonish us that such allegations are insufficient?" *Gorsky,* 2023 WL 3690429, at *14, citing to *Mullenix v. Luna* 577 U.S. 7, 18–19 (2015). It is an apples to oranges comparison that the Supreme Court has refused to support. The deputies should have been granted immunity on both excessive force claims.

**D.     Mr. Gorsky was not falsely arrested.**

Like the analysis above, the dissent assumes he was falsely arrested. "Even if there is a constitutional violation, officers retain qualified immunity unless they violated clearly established law. And once again, the majority's analysis of clearly established law is shockingly scant." *Gorsky,* at *14.

Then the dissent does what the majority does not do; analyzes appropriate precedent. A warrantless arrest is constitutional if the officer has "probable cause to believe that the suspect has committed a crime." *Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir. 1985). "Because probable cause deals with probabilities and

10

depends on the totality of the circumstances,... it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quotations omitted). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such an activity." *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). Probable cause "is not a high bar." *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014).

Here, the officers arrested Mr. Gorsky for refusing to cooperate with their attempts to investigate Mrs. Gorsky's supposed egging. *Gorsky,* at *14. It is a criminal misdemeanor to obstruct a law enforcement investigation. That includes disregarding an officer's lawful orders or instructions. *Gorsky*, at *14, citing to *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017).

The police specifically asked Mr. Gorsky "to wake up [his] wife and have her come downstairs." And as was true for the plaintiff in *Childers*, Mr. Gorsky "did not immediately comply" with the officers' instructions. *Childers*, 848 F.3d at 413. Instead, he asked the officers for the time, said "[y]ou're the one kidding," said "[g]et out" several times, asked to close the door, and appeared to say that it was "[n]ot ... my wife" who egged the vehicle. Mr. Gorsky stalled for over a minute, never complying with the instruction to retrieve his wife. He even conceded in the district court that he "refused" their requests to get Mrs. Gorsky. That is plausibly a violation of § 38.15, as noted by the dissent. *Gorsky,* 2023 WL 3690429, at *14.

Then wrongly, the majority faults the deputies for not finding a case in which an officer had probable cause based on similar facts. But, again, that notion turns the law upside down. It is *Mr. Gorsky* who has the burden to show that the officers' conduct was clearly unlawful under "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Gorsky,* at *14, citing to *Morgan*, 659 F.3d at 371–72 (internal quotation marks and citations omitted). Without such guidance, qualified immunity protects an officer's reasonable judgment calls.

Then the dissent correctly notes that the majority misapplies the caselaw they do cite. *Gorsky,* at *15. Although the majority relies heavily on *Freeman,* it does not clearly undermine the officers' probable cause. In that case, officers explicitly asked a homeowner whether they could search her home, and she refused. An officer responded that he could arrest her if she continued resisting, but she did not budge. So police put her into handcuffs and placed her into a patrol car. *Gorsky,* at *15, citing to *Freeman*, 483 F.3d at 408–09. There, the analysis was easy: Police demanded to search a home without a warrant. That was not a lawful request, so the homeowner "was not ... interfering with the exercise of any authority granted to the deputies by law." Freeman, 483 F.3d at414.  Here, by stark contrast, the officers did not unlawfully ask to enter the home without a warrant; they asked Mr. Gorsky to wake his wife. *Gorsky,* at *15.

The dissent finds that *Voss* does not help either. *Gorsky,* at *15. An officer approached a house in the middle of the night to do a welfare check on a 14-year-old girl who had suicidal thoughts. *Voss v. Goode*, 954 F.3d 234, 236 (5th Cir. 2020). Her mother answered the door and permitted the police to interview her daughter. After the daughter admitted to suicidal ideation, the officer requested a mental-health professional and ordered the daughter to wait in the patrol car. The mother protested and ordered the daughter to get into the family car. After the mother argued with police and resisted instructions to provide identifying information, the officers arrested her under § 38.15. *Gorsky,* at *15., citing to *Voss* at 236–37, 239–40. The court eventually granted the officers qualified immunity.

The dissent finds the majority ignored the important similarities between *Voss* and this case: The majority's misreading is more fundamental. In *Voss*, the dissent notes that the court took no position on whether the officer had probable cause to arrest because the officer's conduct was "reasonable in light of the clearly established law at the time of the incident." *Gorsky,* at *15. A reasonable officer could think he had probable cause to arrest the mother because she told her child to disobey the officer's orders. *Voss,* at 239–40. Without a violation of clearly established law, the officers had qualified immunity.

The same is true in this case.  It does not matter whether the police actually had probable cause to arrest Mrs. Gorsky under that section. The statute and the

13

caselaw permit a reasonable officer to believe that he could arrest Mr. Gorsky for failing to follow police orders made during a lawful investigation. "And, yet again, Mr. Gorsky has failed to point to a single law or case that puts a reasonable officer on notice that he cannot arrest a suspect that he reasonably believes he has probable cause to arrest." *Gorsky,* at *15; *Wesby*, 138 S. Ct. at 586.

Finally, the dissent noted that "[l]aw enforcement officers who act within the scope of their legal duties should not worry about being haled into court for making a reasonable (even if not optimal) choice in the field. Today's decision shakes that certainty." *Gorsky,* at *15.

## CONCLUSION

The court should reverse the judgment on the excessive-force and false arrest claims and should remand with instruction to enter summary judgment for the officers based on qualified immunity on those claims.

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the documents exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1, it contains 3919 words, including the statement required by Fed. R. App. P. 35(b)(1).

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in Times New Roman type 14 point for text and 12 point for footnotes.

3.      The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fed. R. App. 32(a)(7), may result in the Court's striking the petition and imposing sanctions against the person signing the petition.

*/s/ Suzanne Rene' Bradley*
SUZANNE RENE' BRADLEY
Senior Assistant County Attorney

## CERTIFICATE OF SERVICE

I certify that on June 9, 2023, I filed a true and correct copy of the foregoing brief via the Court's CM/ECF system, which will automatically serve a copy on all parties' counsel.

Randall Kallinen
511 Broadway Street
Houston, Texas 77012
attorneykallinen@aol.com

Stanley Clark
Harris County Attorney's Office
1019 Congress
Houston, Texas 77002
Stan.Clark@harriscountytx.gov

/s/ Suzanne Rene' Bradley
SUZANNE RENE' BRADLEY
Senior Assistant County Attorney

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 26, 2023

Lyle W. Cayce
Clerk

No. 20-20084

---

Jacob Gorsky; Olesya Gorsky,

*Plaintiffs—Appellees*,

*versus*

Deputy Guajardo; Deputy Small; Deputy Berry; Deputy Rivaux,

*Defendants—Appellants*.

---

Appeal from the United States District Court
For the Southern District of Texas
USDC No. 4:16-CV-2877

---

Before Higginbotham, Smith, and Dennis, *Circuit Judges*.

Per Curiam:*

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

Jacob and Olesya Gorsky lived next to the Koczman family in the Woodlands in Harris County, Texas. The two families did not get along, calling the police on one another many times. On the evening of February 20, 2016, Defendants-Appellants Deputy Guajardo, Deputy Small, Deputy Berry and Corporal Rivaux (the "officers") responded to complaints from the Koczman family regarding a rowdy pool party at the Gorsky residence and Mrs. Gorsky's alleged smashing of an egg on Mr. Koczman's car. Based on their ensuing interactions with the officers, the Gorskys brought claims against the officers under 42 U.S.C. § 1983. The Gorskys filed suit in the Southern District of Texas alleging violations of their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 based on the officers' unlawful arrest of Mr. Gorsky, illegal entry and search of the Gorsky home, and use of excessive force against the Gorskys.

The district court partially denied the officers' motion for summary judgment and motion to strike certain summary judgment evidence, ultimately concluding that factual disputes affecting the reasonableness of the officers' conduct required denial of the officers' assertion of qualified immunity on certain claims. The officers timely appealed. At issue in this appeal are the Gorskys' claims for (1) unlawful arrest, (2) illegal entry, (3) illegal search, (4) excessive force concerning Mr. Gorsky, and (5) excessive force concerning Mrs. Gorsky. Because we lack jurisdiction to review certain claims at issue in this appeal as they turn on genuine disputes of material facts, we DISMISS the officers' appeal with regard to the unlawful search, unlawful entry and excessive force claims and otherwise AFFIRM the district court.

## I. Factual and Procedural Background

Prior to the events giving rise to this case, Jacob and Olesya Gorsky lived next door to the Koczman family for six years. Over these six years,

the two families placed at least 19 complaint calls about one another to the local police. The events surrounding this appeal arose in the late evening of February 20, 2016, when the Koczmans called the police to complain that the Gorskys were throwing a loud pool party. Two deputies—Berry and Guajardo—responded around midnight and, after issuing a warning to the Gorskys[1] to "quiet down," left the home.

Shortly thereafter, the Koczman family reported to the police that that Mrs. Gorsky had egged their car. Deputies Berry and Guajardo, this time accompanied by Deputy Small and Corporal Rivaux, arrived at the Koczman's home and, after viewing security camera footage of the egging, returned to the Gorsky residence.

The officers rang the doorbell and Mr. Gorsky opened the door. The police informed him of the egging complaint and that they needed to speak to his wife. Mr. Gorsky told the officers that he would get his wife but attempted to close the door on the police officers who, at that time, were standing outside. Rivaux and Berry refused to allow Mr. Gorsky to close the door by placing their feet in the threshold. After refusing to allow Mr. Gorsky to close the door multiple times, Rivaux told Mr. Gorsky that he was hindering an investigation and that they had "every legal right to enter [the] house, put [Mr. Gorsky] in handcuffs, and take [him] to jail." Mr. Gorsky again agreed to go get his wife but asked the officers to leave his home, to which the officers replied, "that is not an option." Guajardo handcuffed Mr. Gorsky and placed him in the police car where he remained

---

[1] During this initial interaction, Mr. Gorsky walked towards Berry and Guajardo with a pool rod in his hand.

for approximately one hour.[2] Mr. Gorsky testified that, when placing him in handcuffs, Guajardo grabbed him, pushed him around, and twisted his arm enough to cause him "a lot of pain."

Around this time, Mrs. Gorsky claims she "heard a commotion in [the] front foyer" and came to the front of the home where she found the officers standing inside her home. Mrs. Gorsky asserts that the officers then immediately put her in handcuffs and began aggressively accusing her of the egging. She stated that, while she was still in handcuffs, the officers pushed her into a chair, which caused bruising on her legs. Because Mrs. Gorsky had been sleeping, she was in some state of undress; and she testified that Rivaux pushed her as she attempted to cover herself and stuck "his fingers in [her] breasts." At some point during these events, Small went further into the house allegedly to check on Mrs. Gorsky's son. The parties dispute whether Mrs. Gorsky consented to the officers' entry into her home and whether she requested they check on her son. The officers then issued a criminal citation to Mrs. Gorsky, released Mr. Gorsky, and left the scene.

In their lawsuit, the Gorskys allege violations of their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 based on the officers' alleged unlawful arrest of Mr. Gorsky, illegal entry and search of the Gorsky home, and use of excessive force against the Gorskys. The officers moved for summary judgment rejecting these claims based, in part, on their assertions of qualified immunity. The district court denied the

---

[2] While Mr. Gorsky testified that Rivaux placed him in handcuffs, Rivaux testified that he told Mr. Gorsky to "[h]ave fun in Harris County" as Guajardo handcuffed Mr. Gorsky. Berry also testified that it was Guajardo who placed Mr. Gorsky in handcuffs.

motions[3] in their entirety, finding that factual disputes precluded it from granting the motions. The officers timely appealed.

## II. Standards of Review

### A. Motion to Strike

An appellate court reviews a district court's ruling on a motion to strike for abuse of discretion. *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012). Our review is a "two-tiered" process when a party asks us to review both evidentiary rulings and a summary judgment decision. *Berry v. Armstrong Rubber Co.*, 989 F2.d 822, 834 (5th Cir. 1993). We first "review the evidentiary rulings under the manifest error standard, then [we] review the trial court's summary judgment decision *de novo*." *Id.*

### B. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). The denial of summary judgment is generally not appealable. *Naylor v. State of La., Dep't of Corr.*, 123 F.3d 855, 857 (5th Cir. 1997) (citing *Aldy v. Valmet Paper Mach.*, 74 F.3d 72, 75 (5th Cir. 1996)). According to the collateral order doctrine, however, orders denying summary judgment based on qualified immunity are appealable when based on conclusions of law. *Id.*

---

[3] Small, Berry, and Guajardo filed a motion for summary judgment, and Rivaux filed a separate motion for summary judgment.

No. 20-20084

While we have jurisdiction to review a denial of summary judgment based on qualified immunity to the extent that it turns on conclusions of law, we do not have jurisdiction over a genuine-issue-of-fact-based denial of qualified immunity." *Naylor*, 123 F.3d at 857; *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020). In other words, denials of qualified immunity on summary judgment are "not immediately appealable when based on sufficiency of evidence." *Naylor*, 123 F.3d at 857.

## C. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 287 (5th Cir. 2020).

Once the defense of qualified immunity has been raised, the plaintiff has the burden of demonstrating that "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts therefore evaluate claims of qualified immunity in a two-prong[4] analysis: first, a court must determine whether the "facts alleged show the officer's conduct violated a statutory or constitutional right." *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011);

---

[4] "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

No. 20-20084

*Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Second, a court must determine whether "the right was clearly established . . . in light of the specific context of the case." *Id.* To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Ashcroft*, 563 U.S. at 741.

### III.    Discussion

### A. Motion to Strike

The district court denied the officers' motion to strike certain statements in the Gorskys' affidavits attached to their response to the officers' motion for summary judgment. While the officers claimed that there were contradictions between the Gorskys' affidavits and their depositions, the district court found no inconsistency meriting exclusion of the affidavits.

Under the sham affidavit doctrine, a court may refuse to consider statements made in an affidavit that are "so markedly inconsistent" with a prior statement as to "constitute an obvious sham." *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 767, 767 (5th Cir. 1988). Yet not "every discrepancy" in an affidavit justifies a district court's refusal to give credence to competent summary judgment evidence. *Winzer v. Kaufman County*, 916 F.3d 464, 472 (5th Cir. 2010); *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980) (sham affidavit rule did not apply where affidavit was not "inherently inconsistent" with prior testimony). An affidavit that "supplements rather than contradicts prior . . . testimony" falls outside the doctrine's ambit. *S.W.S. Erectors, Inc. v Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996). To apply the sham-affidavit rule, we first determine if two statements are contradictory. *Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223, 235 (5th Cir. 2018) (unpublished) (per curiam). If

a party's affidavit contains "inconsistent statements," we then "may refuse to consider h[er] declaration as competent evidence." *Id.*

The officers contend that we should disregard three of the statements the Gorskys made in their affidavits attached to their response to the officers' motion for summary judgment. First, the officers argue that the district court abused its discretion in failing to disregard Mrs. Gorsky's statement that the "officers came into the house before knocking" because during discovery she said that "two or three deputies were on the front porch when [she] came to the front foyer of [her] house." Despite the officer's argument that these statements are inconsistent, it is nonetheless possible that the officers were inside the home before they knocked but stepped into the foyer before Mrs. Gorsky arrived there. For example, the officers could have stepped into the foyer to look for Mrs. Gorsky and when she came into view they may have stepped back onto the porch. While the tension in the two statements may allow for an intense cross-examination, the statements are not directly contradictory. *Winzer*, 916 F.3d at 472.

Second, the officers argue that the district court should have stricken Mrs. Gorsky's assertion that Rivaux called her a "bitch" because she later claimed that she could not hear any officer call her a "bitch" in the audio recording of the interaction during her deposition. The district court correctly concluded that this is not an inconsistency as "[i]t is not inconsistent to insist that something happened but be unable to hear it on an audio recording of the event." Thus, the officers have not pointed to any specific contradiction between Mrs. Gorsky's statement and her deposition testimony.

Finally, the officers moved to strike Mr. Gorsky's statement that he was in so much pain from the handcuffs that he screamed, because in a later deposition Mr. Gorsky stated that the handcuffs caused him lots of

"discomfort and pain" but that this was "not an injury."[5] However, it is not inconsistent for Mr. Gorsky to have stated that he was in discomfort and pain but that he was not ultimately injured by the handcuffs.

Because the challenged statements in the Gorskys' affidavits were not "inherently inconsistent," the district court's refusal to apply the sham-affidavit rule was not manifest error. *Winzer*, 916 F.3d at 472; *Berry*, 989 F.2d at 824. Accordingly, we AFFIRM the denial of the motion to strike.

## B. Jurisdiction to Review Qualified Immunity Denials

"Ordinarily, we do not have jurisdiction to review a denial of a summary judgment motion because such a decision is not final within the meaning of 28 U.S.C. § 1291." *Palmer v. Johnson*, 193 F.3d 346, 350 (5th Cir. 1999). However, the "denial of qualified immunity on a motion for summary judgment is immediately appealable if it is based on a conclusion of law." *Id.* (citing *Johnson v. Jones*, 515 U.S. 304 (1995)). Although we lack jurisdiction to consider "whether there is enough evidence in the record for a jury to conclude that certain facts are true," we do have jurisdiction "to decide whether the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on a given set of facts." *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc); *see also Naylor*, 123 F.3d at 857 ("[W]e have jurisdiction over law-based denials of qualified immunity, but do not have jurisdiction over a genuine-issue-of-fact-based denial of qualified immunity").

---

[5] When viewed in context, the deposition testimony to which the officers refer makes clear that Mr. Gorsky stated that it "was not an injury" when describing sitting in the cramped, cold patrol car.

No. 20-20084

The Gorskys argue that this appeal is foreclosed because the district court's denial of summary judgment was based not on conclusions of law but rather on the court's finding genuine disputes of material fact. The officers do not address the issue of jurisdiction in their briefing, and largely rely on facts the district court properly found to be disputed and material to determining whether the officers are entitled to qualified immunity. We lack jurisdiction to review the denial of summary judgment on the Gorskys' unlawful entry, unlawful search, and excessive force claims because the district court's denial of summary judgment on those claims turned on genuine disputes of fact that preclude a finding the officers' entitlement to qualified immunity.

### 1.     Unlawful Entry

The district court rejected the officers' assertion of qualified immunity on the Gorskys' illegal entry claim[6] based on factual disputes material to Mrs. Gorsky's consent to the officers' entry into the Gorsky residence. Specifically, the district court found disputes of fact material to determining whether the officers were already inside the home when Mrs. Gorsky entered the foyer, and whether Mrs. Gorsky voluntarily consented to the officers' entry into her home. The officers argue on appeal that they are entitled to qualified immunity because the record establishes that Mrs. Gorsky consented to their entry and that there is no clearly established law suggesting that the officers had reason to believe her consent was involuntary.

---

[6] The district court granted the officers' motion for summary judgment on the Gorskys' illegal entry claim based on the officers' placing their feet in the Gorskys' doorframe. The officers thus solely appeal the denial of summary judgment on the illegal entry claim based on the officers' entry in the Gorskys' home after handcuffing and removing Mr. Gorsky from the front-door area.

The officers' challenge to the district court's denial of qualified immunity on this claim is premised entirely[7] on persuading this court that the record supports their factual contention that Mrs. Gorsky consented to their entry into her home. For example, the officers challenge the sufficiency of Mrs. Gorsky's evidence that the officers were already in her home when she told them they could come into the dining room. Yet as the district court noted, the audio recording to which the officers point to support their narrative does not make clear whether the officers were inside or outside of the Gorsky residence at the time Mrs. Gorsky said "yeah, yeah" to Rivaux's suggestion that the officers enter the dining room. These are precisely the type of factual arguments—material to determining the reasonableness of the officers' actions—that we lack jurisdiction to evaluate on appeal. *Morris v. Leblanc*, 674 F. App'x 374, 377 (5th Cir. 2016) (unpublished) (per curiam) (this court "lack[s] jurisdiction to review the district court's decision that a fact issue is genuine.").

Although the officers also attempt to make the legal argument that there is no clearly established law defining how consent is to be given to a warrantless entry, we cannot reach that issue without resolving the factual dispute as to whether Mrs. Gorsky consented to the officers' entry before or after the officers entered her home. *Edwards v. Oliver*, 31 F.4th 925, 932 (5th Cir. 2022) ("Because an analysis of the clearly established prong is fact-intensive, courts must take care not to define a case's 'context' in a

---

[7] The officers argue for the first time in their reply brief that "[e]ven if the officers stepped into the foyer during the process of detaining or arresting Mr. Gorsky, they would still be entitled to qualified immunity" because exigent circumstances warranted their entry into the Gorsky home. We will not consider this argument since it was raised for the first time in their reply brief. *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 528 n.5 (5th Cir. 2020) ("[W]e ordinarily disregard arguments raised for the first time in a reply brief.").

manner that imports genuinely disputed factual propositions.") (internal citation removed). Viewing the facts in a light most favorable to Mrs. Gorsky, as we must, any conversation about consent took place after the officers had already entered the home, which would violate clearly established law from this circuit holding that a warrantless entry into a home without consent is presumptively unreasonable. *United States v. Santiago*, 410 F.3d 193, 198 (5th Cir. 2005) ("A warrantless entry into and search of a dwelling is presumptively unreasonable unless consent is given or probable cause and exigent circumstances justify the encroachment.") (internal citation removed). As this purely factual dispute precludes any analysis of the officers' legal argument, this court is deprived of jurisdiction to review the district court's denial of summary judgment on the unlawful entry claim. We DISMISS the officers' appeal of the district court's denial of summary judgment as to the illegal entry claim.

### 2.     Unlawful Search

The district court denied Small's[8] motion for summary judgment on the Gorskys' unlawful search claim. In rejecting Small's plea for qualified immunity, the district court again relied on factual disputes as to whether Mrs. Gorsky consented to the officers' entry into her home and asked the officers to go check on her son further inside the house. On appeal, the officers contend that Mrs. Gorsky "directed" or "request[ed]" that Small go further into the home to check on Mrs. Gorsky's son and that "[n]o one has identified any clearly established law that prevented Deputy Small from spending a minute to honor a mother's request." [9] As Mrs. Gorsky denies

---

[8] The district court dismissed the illegal search claims against Guajardo, Berry and Rivaux.

[9] The officers cite no record evidence demonstrating that Mrs. Gorsky asked Small to go check on her son, though the audio recording of the interaction reveals Mrs.

No. 20-20084

having made that request, this argument similarly relies on a disputed fact material to assessing the reasonableness of Small's conduct.

Although the officers also aver that "[n]o one has identified any clearly established law that prevented Deputy Small from spending a minute to honor a mother's request," that purportedly law-based argument nonetheless impermissibly requires that we assume that Mrs. Gorsky requested that Small go further into the home to check on Mrs. Gorsky's son. We cannot assume disputed facts against Mrs. Gorsky, and the officers do not otherwise ask this court to assume all facts in favor of the Gorskys in support of their legal argument. *Edwards*, 31 F.4th at 932; *Lytle v. Bexar County., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("[A] defendant challenging the denial of a motion for summary judgment on the basis of qualified immunity must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal.") (internal citation removed). Assuming all facts in favor of Mrs. Gorsky, we cannot say that it was objectively reasonable for Small to conduct a further search of the residence without a warrant or Mrs. Gorsky's consent, and in the absence of exigent circumstances. *Santiago*, 410 F.3d at 198; *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("Warrants are generally required to search a person's home . . . unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.") (cleaned up).

---

Gorsky inquiring as to the well-being of her son and Small asking Mrs. Gorsky where her son was sleeping.

No. 20-20084

Because we are unable to review the illegal search claim due to a lack of jurisdiction, we DISMISS the officers' appeal of the district court's denial of summary judgment on this claim

### 3.     Excessive Force

The Gorskys claim that the officers[10] used excessive force against the couple during their interaction. The district court denied the officers' motion for summary judgment on the excessive force claims as to officers Guajardo and Rivaux. In denying the motion as to Guajardo and Rivaux, the district court concluded that factual disputes as to the reasonableness of their actions precluded a finding that they were entitled to qualified immunity. On appeal, Guajardo and Rivaux challenge the severity of the Gorskys' injuries and the circumstances surrounding the officers' use of force.

As to Mr. Gorsky, the officers attack the sufficiency of Mr. Gorsky's injury and argue that given the circumstances, their use of force against Mr. Gorsky was reasonable and they would have even "been entitled to tackle Mr. Gorsky" because he had been holding a pool rod during their first interaction of the evening. Guajardo and Rivaux argue that the video footage does not demonstrate that Mr. Gorsky screamed in pain while being arrested, but regardless of whether Mr. Gorsky screamed, he testified that the officers grabbed him, pushed him around, and twisted his arm hard enough to cause him "a lot of pain." Even if Mr. Gorsky's injury is "relatively insignificant,"[11] it is nonetheless cognizable if it resulted from

---

[10] The remaining excessive force claims are only against Guajardo and Rivaux given that the district court granted summary judgment to the other officers on those claims.

[11] While the injury caused by an allegedly excessive use of force "must be more than *de minimis*," it need not be significant. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th

"an officer's unreasonably excessive force." *Brown v. Lynch*, 524 Fed. App'x 69, 79 (5th Cir. 2013) (unpublished).

The officers also contend that they reasonably feared Mr. Gorsky might arm himself if left unrestrained because he had grabbed and raised a pool rod during his previous interaction with police. But viewing the evidence in the light most favorable to the Gorskys, Mr. Gorsky never threatened the officers or resisted arrest, and the officers' use of force caused him pain. These disputed facts are precisely the ones that prevented the district court from granting Guajardo and Rivaux[12] qualified immunity as a matter of law, and are not issues of law reviewable on appeal. *Byrd v. Cornelius*, 52 F.4th 265, 270 (5th Cir. 2022) ("A district court's determination that a factual dispute exists in the record is not an issue of law that we can address during an interlocutory appeal."). Moreover, assuming all facts in the light most favorable to Mr. Gorsky, we cannot conclude that the officers' use of force was objectively reasonable given the minimal severity of the underlying crime, the lack of threat Mr. Gorsky posed to the officers, and his absence of resistance to them. *Tarver*, 410 F.3d at 753; *see also Heitschmidt v.*

---

Cir. 2005) (citing *Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir. 1999)). The dissent cites *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007), *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001), and *Templeton v. Jarmillo*, 28 F.4th 618, 623 (5th Cir. 2022) for the proposition that the use of force associated with handcuffing can never form the basis of an excessive force claim. Yet the plaintiffs in those cases all alleged injuries related to "tight handcuffing" whereas here Mr. Gorsky's excessive force claim is not based on the tightness of the handcuffs used to arrest him but rather the officers use of force in pushing and grabbing him. *Freeman*, 483 F.3d at 417 ("the most substantial injury claimed by [plaintiff] is that she suffered bruising on her wrists and arms because the handcuffs were applied too tightly when she was arrested"); *Glenn*, 242 F.3d at 314 ("[plaintiff's] sole contention is that the officer put the handcuffs on her too tightly"); *Templeton*, 28 F.4th 618, 623 (5th Cir. 2022).

[12] As noted above, the parties presented conflicting evidence as to who even arrested Mr. Gorsky by placing him in handcuffs. *See* supra note 2.

No. 20-20084

*City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998) (reversing dismissal of excessive force claim based on injuries related to handcuffing where based on record court was "unable to conclude that either the force exerted or the officers' conduct was reasonable as a matter of law).[13]

The district court's denial of summary judgment as to Mr. Gorsky's excessive force claim did not turn on an issue of law, and on appeal Guajardo and Rivaux impermissibly ask this court to construe facts in their favor that the district court properly found to be in dispute and material to the legal question of whether their use of force was objectively reasonable.

As to Mrs. Gorsky, Rivaux[14] similarly challenges the severity of her injuries, once again arguing that Mrs. Gorsky was not subject to unreasonable force because the alleged force cannot be heard in a video recording of the interaction. Rivaux also appears to argue that he was threatened enough by the situation—an investigation into an alleged "egging" of a car—that use of force against Mrs. Gorsky was warranted. But these arguments rely on fact-based disputes regarding the extent of Mrs. Gorsky's injuries and the level of threat to the officers, which the district court correctly found to be material to the question of reasonableness so as to preclude a finding that Rivaux was entitled to

---

[13] The district court found that factual disputes as to the circumstances surrounding Mr. Gorsky's arrest and resulting injuries are material because the objective reasonableness of an officer's use of force is determined in relation to "the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008); *Alexander v. City of Roundrock*, 854 F.3d 298, 309 (5th Cir. 2017) ("the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances").

[14] Mrs. Gorsky's excessive force claim appears to be brought against Rivaux only based on his handcuffing her and pushing her into a chair, which caused her bruising.

qualified immunity as a matter of law. *See Tarver*, 410 F.3d at 753; *Brown*, 524 Fed. Appx at 79 ("Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold[.]"). Because Rivaux disputes the sufficiency of Mrs. Gorskys' evidence with regard to her injuries and resistance to the officers, he has not articulated a legitimate basis for an interlocutory appeal of the denial of qualified immunity on Mrs. Gorsky's excessive force claim. *See Byrd*, 52 F.4th at 270; *Cooley v. Grimm*, 272 F. App'x 386, 392 (5th Cir. 2008) (unpublished) (per curiam) (dismissing appeal for lack of jurisdiction where appellant "merely dispute[d] the sufficiency" of appellees' evidence). Assuming all facts in favor of Mrs. Gorsky, we cannot find that Rivaux's use of force against her was objectively reasonable in light of established precedent. *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) ("a defendant's violation of constitutional rights can still be objectively reasonable if the contours of the constitutional right at issue are sufficiently unclear").

Because we lack jurisdiction to review the district court's fact-based denials of summary judgment on the excessive force claims, we DISMISS Guajardo and Rivaux's appeal in this regard.

## C. Unlawful Arrest

While we lack jurisdiction to review the denial of the officers' motion for summary judgment as to the Gorskys' unlawful entry, unlawful search, and excessive force claims, we can review the legal questions presented in the officers' appeal of the district court's rejection of their assertion of qualified immunity as to the unlawful arrest claim.[15]

---

[15] The unlawful arrest claim is against Guajardo and Rivaux only after the district court granted summary judgment to the other officers on this claim.

No. 20-20084

The Fourth Amendment prohibits government officials from making "unreasonable . . . seizures." U.S. Const. amend. IV. A warrantless arrest violates that Fourth Amendment right "if the arresting officer lacks probable cause to believe that the suspect has committed a crime." *Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir. 1985). Because we are analyzing an assertion of qualified immunity on an unlawful-arrest claim, we must, therefore, determine (1) whether the officers had probable cause to arrest Mr. Gorsky for any crime, or (2) whether "the officers' behavior was reasonable in light of the clearly established law at the time of the incident." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (cleaned up). After the officers raised the qualified immunity defense, "the burden then shifts to the plaintiff." *Brown*, 623 F.3d at 253. Although "[t]he plaintiff bears the burden of negating qualified immunity," we still draw "all inferences . . . in [her] favor." *Id.*

The district court denied the officers' request for qualified immunity on Mr. Gorsky's unlawful arrest claim due to factual disputes impacting the objective reasonableness of the officers' actions. While the parties disputed whether Mr. Gorsky was in fact arrested, the district court determined that—when viewing the facts in the light most favorable to the Gorskys—Mr. Gorsky was arrested, and the officers lacked probable cause to effectuate that arrest. While we lack jurisdiction to review the district court's conclusion that there was sufficient evidence to support Mr. Gorsky's claim that he was arrested, we may review the district court's denial of qualified immunity to the officers assuming all facts in favor of Mr. Gorsky.

Guajardo and Rivaux argue that, even assuming Mr. Gorsky was arrested, the district court erred in rejecting their assertion of qualified immunity because they reasonably believed there was probable cause to arrest Mr. Gorsky based on his failure to follow instructions and because

No. 20-20084

they requested and complied with legal advice from the Harris County District Attorney's Office. To determine whether the officers were in fact entitled to qualified immunity on the unlawful arrest claim, we assess whether the defendants violated the plaintiff's constitutional rights, and whether the defendants' actions were objectively unreasonable in light of clearly established law. *Harris*, 745 F.3d at 772.

First, the officers violated Mr. Gorsky's constitutional rights by arresting him without probable cause. It is axiomatic that "[a] warrantless arrest violates" that Fourth Amendment right "if the arresting officer lacks probable cause to believe that the suspect has committed a crime." *Bodzin*, 768 F.2d at 724. As noted above, we lack jurisdiction to review the district court's determination that Mr. Gorsky presented sufficient evidence that he was arrested without probable cause. Mr. Gorsky has thus overcome Guajardo's and Rivaux's assertion of qualified immunity as to the first prong of the qualified immunity analysis since, assuming all facts in his favor, he was arrested without probable cause for interfering with public duties because such an offense require more than merely speech and argument with officers conducting an investigation.[16]

Second, even if Mr. Gorsky's constitutional rights were violated when Guajardo and Rivaux arrested him without probable cause for interfering with their investigation, the officers may still be entitled to

---

[16] Texas Penal Code § 38.15 provides, "[a] person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with ... a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." *Id*. § 38.15(a)(1). To violate the statute, a person's interference must consist of more than speech alone, *id*. § 38.15(d), and we have held that "merely arguing with police officers about the propriety of their conduct . . . falls within the speech exception to section 38.15" and thus does not constitute probable cause to arrest someone for interference, *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007).

qualified immunity if a reasonable officer could have believed she had probable cause to arrest Mr. Gorsky for failure to comply with instructions to get his wife from inside the house as part of a criminal mischief investigation. *Voss v. Goode*, 954 F.3d 234, 239 (5th Cir. 2020) ("An officer is entitled to qualified immunity even if [s]he did not have probable cause to arrest a suspect, if a reasonable person in h[er] position would have believed that h[er] conduct conformed to the constitutional standard in light of the information available to h[er] and the clearly established law.") (cleaned up). The officers argue that Mr. Gorsky did not have the right to leave their sight to go get his wife inside his own home, or to decline to get his wife from inside his home because the officers were in the midst of an investigation into the egging of the Koczman's car. They also argue that their consultation with the district attorney after the arrest entitles them to qualified immunity.[17]

Yet the cases the officers cite in support of their contention that they reasonably believed probable cause existed to arrest Mr. Gorsky all involved factual scenarios where the interference consisted of physical obstruction or commands to act in a way that interfered with instructions made with legal authority. *See Voss*, 954 F.3d at 237 (granting qualified immunity where arrestee "instructed her child to physically disobey an officer and the child complied."); *Pearlman v. City of Fort Worth, Tex.*, 400 F. App'x 956, 959 (5th Cir. 2010) (unpublished) (per curiam) (officer "indisputably" had

---

[17] While "advice obtained from a prosecutor *prior to* making an arrest should be factored into the totality of the circumstances and considered in determining the officer's entitlement to qualified immunity," *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255 (3d Cir. 2010) (emphasis added), here the officers did not speak to the prosecutor until *after* they arrested Mr. Gorsky and the prosecutor advised them to release Mr. Gorsky. The officers are not entitled to qualified immunity based on seeking advice from the Harris County District Attorney's office after arresting Mr. Gorsky.

probable cause where arrestee "physically intervened in an attempt to keep [the subject of investigation] away from" the officer); *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (reasonable officer could have believed probable cause existed where arrestee "failed to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech").

Those cases thus stand for the proposition that an officer may reasonably believe that probable cause exists to make an arrest for interference with public duties where an arrestee physically obstructs an officer or fails to comply with an instruction made within the scope of the officer's lawful command. *Voss*, 954 F.3d at 237 ("[A]ctions such as making physical contact with any of the officers or physically obstructing them from performing their legally authorized duties could constitute interference.") (cleaned up); *Childers*, 848 F.3d at 414 (arrestee's failure to move truck could have led reasonable officer to believe probable cause existed where arrestee called police to his property and arrestee did not dispute that the officers were "performing duties authorized by law.").[18]

Here, in contrast, Mr. Gorsky's failure to comply was limited to failing to immediately retrieve his wife from inside his home at the officers' request because the officers did not have the authority to enter the Gorskys' home to retrieve Mrs. Gorsky themselves. The district court properly relied on *Freeman* in determining that Mr. Gorsky did not interfere with the exercise of lawful authority when he tried to close his front door, did not

---

[18] The dissenting opinion ignores that while in *Childers* the plaintiff asked police to enter his property to effectuate an eviction and then physically blocked their entry, Mr. Gorsky did not invite officers to his property, did not physically obstruct their investigation, and had no duty to retrieve his wife from inside merely because the police wanted to talk to her about an alleged crime that, as the dissent acknowledges, was "as minor as they come." *See Childers*, 848 F.3d at 414.

allow the officers into his home, and failed to immediately produce his wife. 483 F.3d at 413 ("Freeman's refusal to consent to a warrantless search of her home could neither itself justify an arrest nor create probable cause to arrest Freeman for another offense."). Because the officers did not have the legal authority to enter Mr. Gorsky's home or to compel Mr. Gorsky to produce his wife—and in fact interfered with his ability to close his own front door—Mr. Gorsky's noncompliance did not interfere with the exercise of "any authority granted to the deputies by law." *Id.* at 414 ("[A] reasonable officer would have known that he could not lawfully search Freeman's home, and Freeman was not, therefore, interfering with the exercise of any authority granted to the deputies by law."). The district court was correct in concluding that the record—taken in the light most favorable to the Gorskys—and relevant law did not warrant a finding of qualified immunity in favor of the officers.

Because the Gorskys rebutted the officers' assertion of qualified immunity for wrongfully arresting Mr. Gorsky, we AFFIRM the district court's denial of the officers' motion for summary judgment on Mr. Gorsky's false arrest claim.

## IV.  Conclusion

Based on the foregoing, we DISMISS the officers' appeal of the district court's denial of their motion for summary judgment on the Gorskys' unlawful entry, unlawful search, and excessive force claims for lack of jurisdiction, and AFFIRM the district court's order denying the officers' motion to strike and motion for summary judgment on all of the Gorskys' remaining claims.

No. 20-20084

Jerry E. Smith, *Circuit Judge*, dissenting:

By dismissing the officers' appeal in an unpublished per curiam opinion, the majority gives the impression that this case is easy.  In that respect, my colleagues are right.  It should have been.

Instead, after taking more than two years from oral argument, the majority delivers a patchwork opinion.  It correctly resolves the evidentiary dispute.  *Supra* III.A.  And it properly dismisses the appeal of plaintiffs' § 1983 claims for unlawful entry and illegal search.  *Supra* III.B.1–2.

On the other § 1983 claims, however, the majority loses the forest for the trees.  Citing a bevy of immaterial factual disputes, the majority insists that we lack jurisdiction over the appeal of the excessive-force claims.  Nonsense.  The officers have qualified immunity ("QI")—even construing the facts in favor of the Gorskys, we can dispense with the meritless § 1983 claims because the officers did not violate clearly established law.  Yet the majority gives clearly established law little more than lip service.  When it finally grapples with clearly established law on the false-arrest claim, it renders our jurisprudence unrecognizable.

This is just one more example of the majority's willingness to skirt the strictures of QI.[19]  I respectfully dissent from parts III.B.3 and III.C.

I.

We have no jurisdiction over certain QI appeals.  "In deciding an interlocutory appeal of a denial of [QI], we can review the *materiality* of any factual disputes, but not their *genuineness*."  *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000); *accord Craig v. Martin*, 49 F.4th 404, 408–09 (5th

---

[19] *See, e.g.*, *Spikes v. McVea*, 8 F.4th 428, 430 (5th Cir. 2021) (Higginbotham and Dennis, JJ.), *on reh'g*, 12 F.4th 833 (5th Cir. 2021), *reh'g denied*, No. 19-30019, 2021 WL 4978586 (5th Cir. Oct. 13, 2021); *see also id.* at 440 (Smith, J., dissenting).

No. 20-20084

Cir. 2022).  Thus, where officers' QI depends on the resolution of genuine factual disputes, we cannot hear their appeal from the denial of summary judgment.

Plaintiffs' unlawful-entry and illegal-search claims are good examples.  The Fourth Amendment prevents police from entering or searching a home without a warrant or an exception to the warrant requirement, such as the homeowner's consent.  *Fernandez v. California*, 571 U.S. 292, 298 (2014).  The Gorskys allege that police entered their house without Mrs. Gorsky's consent, while defendants insist that they had her express approval.  Similarly, the Gorskys claim that police searched the house for the Gorskys' son without Mrs. Gorsky's consent; again, defendants maintain they acted at her  direction.  Whether the officers violated the Fourth Amendment depends entirely on the resolution of those factual disputes, which we cannot review at this stage of the litigation.

It helps, of course, that those issues involve a bright-line rule.  Both the constitutionality of the search and the application of QI hinge on the existence of consent.  Because that fact is contested, the majority rightly dismisses the officers' appeals on the unlawful-entry and illegal-search claims.  So far, so good.

## II.

Once the majority gets to the excessive force claims, however, it loses its way.  Even assuming the facts in the light most favorable to the plaintiffs, we decide *de novo* whether the defendants' actions violated the Constitution and—critically—whether they acted reasonably in light of clearly established law.  *See Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021).  Instead, the majority sketches a few fact disputes, throws up its hands, and ignores the second half of the analysis.  That is not our law.

No. 20-20084

A.

Start with Mr. Gorsky's excessive-force claim. To survive summary judgment, he had to defeat the officers' claim of QI. That is no small feat. He had the burden to establish both (1) that his constitutional rights were violated and (2) that "the law so clearly and unambiguously prohibited" the defendant's conduct that every reasonable official would have known his actions were illegal. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). Mr. Gorsky has proven neither.

1.

First, Mr. Gorsky was not subjected to excessive force.

To violate the Fourth Amendment, police must inflict injury with objectively unreasonable force. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). We assess reasonableness by considering, among other things, (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. *De minimis* injuries are not objectively unreasonable, although whether the police are justified in causing minor injuries depends on the facts. *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017).

The majority attests that Gorsky suffered objectively unreasonable harm while being handcuffed because he was in "a lot of pain" and did not pose a threat to officers or resist arrest. *Supra* III.B.3. But whence does the majority's confidence come? The majority discusses no supporting caselaw.[20] The "a lot of pain" test appears nowhere in our jurisprudence.

---

[20] It quotes *Brown v. Lynch*, 524 F. App'x 69 (5th Cir. 2013), for a generic proposition, but the facts of that unpublished case do not help the majority. In *Brown*, *id.* at 81, we found excessive force where police punched a nonthreatening arrestee eight times in

No. 20-20084

In its slapdash attempt to balance the *Graham* factors, the majority completely ignores our settled precedent. This court has made certain that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest" are *de minimis* and therefore "do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (Dennis, J.). For example, in *Freeman*, the plaintiff alleged that the police twisted her arms, "jerked her all over the carport," and applied handcuffs so tightly that it bruised her wrists and arms. *Id.* at 416–17. In *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001), the plaintiff alleged that handcuffs were applied too tightly and caused one of her wrists to swell. And in *Templeton v. Jarmillo*, 28 F.4th 618, 623 (5th Cir. 2022), the plaintiff alleged that a tight handcuffing caused pain in his shoulder. In each of those cases, we held that the use of force incident to handcuffing was constitutional, so the officers were entitled to QI.

The majority dismisses our precedents addressing handcuffing in a single footnote, citing the thinnest of factual distinctions and ignoring *Freeman*'s core holding. Instead of following our directly applicable caselaw, the majority falls back on the general maxim that even insignificant injuries can be unlawful if they result from excessive force. *Supra* III.B.3. But that tells us nothing about whether Mr. Gorsky's injuries resulted from excessive force. At most, he alleges that, while being handcuffed, police pushed him around and twisted his arm, and he screamed.[21] Those are the

---

the body and face with closed fists. Then, with no explanation, the majority cites *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005), conveniently leaving out that *Tarver* involved an officer who allegedly slammed a police car door on an arrestee's head and foot.

[21] Seemingly for the first time on appeal, Mr. Gorsky alleges he was bruised, but that appears nowhere in the record. The majority rightly declines to credit that accusation. Even if he was bruised, this case would be like *Freeman*.

insignificant injuries associated with handcuffing that we have held are not excessive. The majority gives no reason to treat this case differently.[22]

So what is the basis for the majority's finding of a constitutional violation? Given the circumstances, it "cannot conclude that the officers' use of force was objectively reasonable." *Supra* III.B.3. But that gets the burden entirely backwards. It is not the officers' job to prove their conduct was reasonable. They have QI. It is the *plaintiffs'* burden to prove that the use of force was objectively *un*reasonable. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Mr. Gorsky failed to do so, and it's not even close.

### 2.

Worse still, the majority completes its discussion of Mr. Gorsky's excessive-force claim without even a suggestion that officers violated clearly established law. *See supra* III.B.3. That is a grave deficiency, because even if the use of force in handcuffing Mr. Gorsky was objectively unreasonable, he had to prove that it was so clearly excessive under our law that any reasonable officer would have been on notice. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). The majority neglects to show as much— nor could it if it wanted to. The appropriate degree of force in this particular situation was not clearly established by any precedent.

---

[22] The district court suggested that *Alexander* requires us to walk through the *Graham* factors afresh in each case, and we cannot rely on past cases holding that incidental handcuffing injuries are *de minimis*. *See Alexander*, 854 F.3d at 309. Yet I was on the panel in *Alexander*, and that wildly overreads the case. Although *Alexander* clarified that whether an injury is *de minimis* or objectively unreasonable is the same inquiry, it did not sweep away our precedents holding that certain injuries are *de minimis* (i.e., not objectively unreasonable). *See id*. Since *Alexander*, we have not hesitated to reaffirm our handcuffing precedents. *See, e.g.*, *Templeton*, 28 F.4th at 622–23; *Lansdell v. Miller*, 817 F. App'x 27, 27 (5th Cir. 2020) (per curiam). *Alexander* does not change the inescapable conclusion that minor injuries incident to handcuffing—without more—are not objectively unreasonable.

No. 20-20084

QI protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotation omitted). Especially in the realm of excessive force, the lawfulness of an officer's conduct "depends very much on the facts of each case, and thus police officers are entitled to [QI] unless existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (internal citations and quotation marks omitted). Both in 2016 and now, there was no controlling precedent putting every reasonable officer on notice that it is unconstitutional for a suspect to experience incidental pain while being handcuffed. That should have ended the QI analysis on Mr. Gorsky's excessive-force claim.

B.

The majority's analysis of Mrs. Gorsky's claim fares no better. She contends that Officer Rivaux used excessive force by grabbing her shoulders, turning her around while handcuffing her, and then pushing her down into a chair while handcuffing her. She alleges that afterward, she developed bruises on her legs and wrists. The district court identified several factual disputes over the nature and degree of Rivaux's use of force. The majority insists that those disputes rob us of jurisdiction over the appeal. In other words, it shrugs and says: "Our hands are tied."

What self-forged fetters. Of course we cannot alter the district court's determination that there is a genuine dispute about the extent of Mrs. Gorsky's injuries and how roughly she was handled. Nevertheless, factual disputes are not a get-out-of-QI-free card. We can still assume the facts in Mrs. Gorsky's favor and determine whether those injuries resulted from excessive force. *Kokesh*, 14 F.4th at 391–92. Plus, we must decide whether the violation, to the extent one has been alleged, contradicts clearly established law. The majority does neither.

No. 20-20084

Reasonable minds might differ on whether the officers used excessive force on Mrs. Gorsky. As noted above, bruising from handcuffing is a *de minimis* injury. *Freeman*, 483 F.3d at 417. And "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (cleaned up). It should also not escape consideration that the police had a long history with the Gorkys and may have feared escalation.[23] Still, Mrs. Gorsky posed no immediate safety risk to the officers, she did not resist arrest, and her underlying crime—egging her neighbor's car—was as minor as they come. But under *Graham*, it was still her burden to show that Rivaux arrested her with excessive force. It is far from certain that she has carried that burden, even if she is right on the facts.

There is no debate, however, that the officer's conduct did not violate clearly established law. Mrs. Gorsky cannot point to a single case holding that pushing an arrestee into a chair—or something even remotely comparable—was excessive force. Nor does the majority supply one for her. A survey of our caselaw shows the weakness of its position. For example, we have held that police used excessive force on nonthreatening

---

[23] The Gorskys were in a drawn-out dispute with their nextdoor neighbors, the Koczmans. Police were dispatched to the Gorskys' house nineteen times between 2013 and 2018 because of feuding between the families. Even excluding all the altercations after the egging, the Koczmans had accused the Gorskys of noisy gatherings, public nudity, malicious prosecution, property damage, and a variety of offensive behavior including swinging a shovel at Mr. Koczman while calling him a Nazi and shouting "Heil Hitler." The Gorskys, in turn, called the cops on the Koczmans for putting dog feces into their pool, throwing a tree limb into their yard, putting up supposedly offensive religious signs (such as a sign with the word "Pray"), and digging a draining ditch between the two properties. Why those families despised each other so greatly is unclear, but, as they say, "every unhappy family is unhappy in its own way." Leo Tolstoy, Anna Karenina 5 (Constance Garnett trans., Barnes & Noble Classics 2003). Regardless, police may have had a reasonable fear of escalation in their interactions with Mr. and Mrs. Gorsky.

arrestees when they pulled a plaintiff from her car and threw her against the vehicle,[24] forced a plaintiff's jaw into a window and broke teeth,[25] or "mashed" a plaintiff's face into the concrete.[26]  But none of Mrs. Gorsky's allegations comes close to that kind of objective unreasonableness.

Without unambiguous precedent, it cannot be clearly established that pushing an arrestee into a chair with enough force to cause bruising is objectively unreasonable force.  *Kisela*, 138 S. Ct. at 1152–53.  Nor is this one of the rare cases where, in the absence of a governing precedent, the illegality would be *so* obvious that any thinking officer would be on notice that his actions were unconstitutional.  *See, e.g.*, *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020).

So, once again, the underlying factual disputes do not end this appeal.  No matter how favorably to Mrs. Gorsky we view the record, she has not demonstrated that Rivaux violated clearly established law.  At best, she has shown that Rivaux's actions were disputably illegal, but only by applying general Fourth Amendment rules to a new situation.  How many times must the Supreme Court admonish us that such allegations are insufficient?  *See, e.g.*, *Mullenix v. Luna*, 577 U.S. 7, 18–19 (2015).

III.

Finally, the majority wrongly allows Mr. Gorsky's claim for false arrest to proceed.  We can assume *arguendo* that Mr. Gorsky was falsely arrested.  Even if there is a constitutional violation, officers retain QI unless they violated clearly established law.   And once again, the majority's analysis of clearly established law is shockingly scant.

---

[24] *Deville v. Marcantel*, 567 F.3d 156, 162, 169 (5th Cir. 2009).

[25] *Bush v. Strain*, 513 F.3d 492, 496 (5th Cir. 2008).

[26] *Alexander*, 854 F.3d at 309.

A warrantless arrest is constitutional if the officer has "probable cause to believe that the suspect has committed a crime." *Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir. 1985). The officers arrested Mr. Gorsky for refusing to cooperate with their attempts to investigate Mrs. Gorsky's supposed egging.[27] Under Texas law, it is a criminal misdemeanor to obstruct a law enforcement investigation.[28] That includes disregarding an officer's lawful orders or instructions. *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017).

The police specifically asked Mr. Gorsky "to wake up [his] wife and have her come downstairs." And as was true for the plaintiff in *Childers*, Mr. Gorsky "did not immediately comply" with the officers' instructions. *Childers*, 848 F.3d at 413. Instead, he asked the officers for the time, said "[y]ou're the one kidding," said "[g]et out" several times, asked to close the door, and appeared to say that it was "[n]ot . . . my wife" who egged the vehicle. Mr. Gorsky stalled for over a minute, never complying with the instruction to retreive his wife. He even conceded in the district court that he "refused" their requests to get Mrs. Gorsky. That is plausibly a violation of § 38.15.

Yet, after adverting to the rule that the officers are "still . . . entitled to [QI] if a reasonable officer could have believed she had probable cause to arrest Mr. Gorsky," *supra* III.C, the majority faults the *officers* for failing to identify a case in which an officer had probable cause based on similar facts. But, again, that notion turns the law upside down. It is *Mr. Gorsky* who has

---

[27] Notably, that was not merely defendants' claim on appeal—the officers told Mr. Gorsky, at the time, they were arresting him for obstructing an investigation.

[28] A person commits that offense if he, "with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." Tex. Penal Code § 38.15(a)(1).

No. 20-20084

the burden to show that the officers' conduct was clearly unlawful under
"controlling authority—or a robust consensus of persuasive authority—
that defines the contours of the right in question with a high degree of
particulari-ty." *Morgan*, 659 F.3d at 371–72 (internal quotation marks and
citations omitted).  Without such guidance, QI protects an officer's
reasonable judgment calls.

Furthermore, the majority misapplies the precedents it does cite.
Take *Freeman*, for example.  Although the majority relies heavily on the
case, it does not clearly undermine the officers' probable cause.  In that
case, officers explicitly asked a homeowner whether they could search her
home, and she refused.  An officer responded that he could arrest her if she
continued resisting, but she did not budge.  So police put her into handcuffs
and placed her into a patrol car.  *Freeman*, 483 F.3d at 408–09.  There, the
analysis was easy:  Police demanded to search a home without a warrant.
That was not a lawful request, so the homeowner "was not . . . interfering
with the exercise of any authority granted to the deputies by law."  *Id.* at
414.  Here, by stark contrast, the officers did not unlawfully ask to enter the
home without a warrant; they asked Mr. Gorsky to wake his wife.

Neither does *Voss* help the majority.  There, an officer approached a
house in the middle of the night to do a welfare check on a fourteen-year-old
girl who had expressed suicidal thoughts.  *Voss v. Goode*, 954 F.3d 234, 236
(5th Cir. 2020).  Her mother answered the door and permitted the police to
interview her daughter.  After the daughter admitted to suicidal ideation,
the officer requested a mental-health professional and ordered the daughter
to wait in the patrol car until the counselor arrived.  At that point, the
mother protested and ordered the daughter to get into the family car.  After
the mother argued with police for a few minutes and resisted instructions to
provide identifying information, the officers arrested her under § 38.15.  *Id.*
at 236–37, 239–40.  The court eventually granted the officers QI.

The majority claims *Voss* does not squarely support the officers' arrest of Mr. Gorsky. Nevermind the important similarities between *Voss* and this case: The majority's misreading is more fundamental. In *Voss*, we took no position on whether the officer had probable cause to arrest because the officer's conduct was "reasonable in light of the clearly established law at the time of the incident." *Id.* at 239. A reasonable officer could think he had probable cause to arrest the mother because she told her child to disobey the officer's orders. *Id.* at 239–40. Without a violation of clearly established law, the officers had QI.

The same is true here. We do not need to decide whether Mr. Gorsky violated § 38.15; we do not even need to address whether the police actually had probable cause to arrest Gorsky under that section. The statute and the caselaw permit a reasonable officer to believe that he could arrest Mr. Gorsky for failing to follow police orders made during a lawful investigation. And, yet again, Mr. Gorsky has failed to point to a single law or case that puts a reasonable officer on notice that he cannot arrest a suspect that he reasonably believes he has probable cause to arrest.

## IV.

By dismissing the officers' appeal in an unpublished per curiam opinion, the majority implies that this case is unremarkable. That is far from true. The majority needlessly subjects the officers to plenary trial. Worse, it sends the message that with the right panel majority, our longstanding rules about QI will quietly but perniciously fall by the wayside.

That the defendants may yet win at trial is cold comfort: QI is immunity from suit, not just from ultimate liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). Law enforcement officers who act within the scope of their legal duties should not worry about being haled into court for making a reasonable (even if not optimal) choice in the field. Today's

No. 20-20084

decision shakes that certainty.

We should reverse the judgment on the excessive-force and false-arrest claims and should remand with instruction to enter summary judgment for the officers based on QI.  Because the majority mocks the law of QI, I respectfully dissent.